**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 26-cv-25663-ALTMAN**

**YORDANIS LOPEZ-GARCIA**,

*Petitioner*,

*v.*

**MARKWAYNE MULLIN,** *et al.*,

*Respondents.*

_________________________________/

# ORDER

Yordanis Lopez-Garcia filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging his continued detention in the custody of U.S. Immigration and Customs Enforcement ("ICE"). *See generally* Petition for Writ of Habeas Corpus (the "Petition") [ECF No. 1]. Lopez-Garcia says that his detention violates his constitutional right to due process because: (1) he has been detained "beyond the presumptively reasonable period"; and (2) ICE hasn't shown that his removal is "significantly likely in the reasonably foreseeable future." *Id.* at 6. The Respondents counter that Lopez-Garcia's detention is lawful because ICE tried to remove him to Mexico, because "the Government of Mexico regularly accepts individuals who are removed from the United States," and because the removal failed only when Lopez-Garcia "refused to sign the notice" of removal. Gov't Suppl. [ECF No. 13] at 2.[1] After careful review, we **DENY** the Petition.

## THE FACTS

Our Petitioner—Yordanis Lopez-Garcia—"is a citizen of Cuba[.]" Petition ¶ 16. He was paroled into the "United States from Cuba and has resided continuously in the United States since

[1] On October 13, 2026, we found that "the Petitioner hasn't established that there's no significant likelihood of removal in the reasonably foreseeable future" and ordered supplemental briefing. Order for Supplemental Briefing [ECF No. 12]; *see also* Gov't Suppl.; Pet. Suppl. [ECF No. 14].

that time." *Id.* ¶ 2. "On or about October 9, 2019, an Immigration Judge entered a final order of removal against" Lopez-Garcia. *Id.* ¶ 3. "After ICE was unable to effectuate removal, [Lopez-Garcia] was released from custody under an Order of Supervision" ("OSUP"). *Id.* ¶ 4. "On June 16, 2025, the United States District Court for the Southern District of Florida convicted [Lopez-Garcia] for the offense of Conspiracy to Commit Bank Fraud." Response [ECF No. 6] at 3 (citing Amended Judgment, *United States v. Yordanis Lopez-Garcia*, 25-cr 20002-RAR (S.D. Fla. Sept. 5, 2025) (Ruiz, J.), ECF No. 54). On March 17, 2026, his OSUP was "revoked by ICE alleging removal to Mexico was possible," *id.* ¶ 5, and Lopez-Garcia was accordingly taken into immigration detention that same day, *see id.* ¶ 16.

Lopez-Garcia seeks a writ of habeas corpus, asserting three counts—a due-process violation (Count I) and two violations of 8 U.S.C. § 1231(a) (Counts II–III). *See id.* ¶¶ 23–29. In the Petition, he argues that, because "removal to Cuba or Mexico is [not] likely to occur in the reasonably foreseeable future," *id.* ¶ 8, his detention "no longer bears a reasonable relationship to its purported purpose of effectuating removal" and thus violates due process and § 1231(a), *id.* ¶ 25.

"On September 3, 2026, ICE [Enforcement and Removal Operations ('ERO')] issued [Lopez-Garcia] a notice of removal, informing him of their intent to remove him to Mexico." Herrero Decl. [ECF No. 13-1] ¶ 15. But Lopez-Garcia "refused to sign the notice." *Ibid.*; *see also* Sept. 3 Notice of Removal [ECF No. 13-2] (noting that Lopez-Garcia "Refused to Sign" under the space for "Served On: (Alien's Signature)"). "On October 15, 2026," ICE ERO *again* "issued [Lopez-Garcia] a notice of removal, informing him of their intent to remove him to Mexico." Herrero Decl. ¶ 18. And, once again, Lopez-Garcia "refused to sign the notice." *Ibid.*; *see also* Oct. 15 Notice of Removal [ECF No. 13-4] (showing that Lopez-Garcia "Refused to Sign" in the space left open for "Served On: (Alien's Signature)").

The parties disagree about what the unsigned Notices of Removal to Mexico show. The Respondents say that Lopez-Garcia's "own conduct has obstructed his removal and caused the delay of which he now complains." Gov't Suppl. at 2. Specifically, they argue that "[a]ssuming [Lopez-Garcia's] cooperation, the Government of Mexico regularly accepts individuals who are removed from the United States," and that "the Government of Mexico does not issue travel documents for individuals with final orders of removal, nor requires a Mexican travel document to effectuate removal." *Ibid.* "[A]ssuming [Lopez-Garcia's] cooperation," therefore, "ICE ERO sees no impediment to [Lopez-Garcia's] removal." *Ibid.* In Lopez-Garcia's view, however, "the absence of travel documentation, combined with the uncertainty regarding Mexico's willingness to accept him, raises substantial questions concerning whether his removal can realistically be effectuated." Pet. Suppl. [ECF No. 14] at 2. He therefore says that his detention now exceeds the six-month threshold the U.S. Supreme Court outlined in *Zadvydas*[2] and asks us to release him because the Respondents have failed to show a "significant likelihood of removal in the reasonably foreseeable future." *Ibid.* The Respondents maintain that "the removal period should be tolled because [Lopez-Garcia] has thwarted his removal" and contend that Lopez-Garcia remains lawfully detained, pending his removal, under the provisions of 8 U.S.C. § 1231. Gov't Suppl. at 5.

## THE LAW

The federal habeas corpus statute, 28 U.S.C. § 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Cadet v. Bulger*, 377 F.3d 1173, 1181–82 (11th Cir. 2004) (quoting 28 U.S.C. § 2241(c)(3)), *abrogated in part on other grounds by Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). A petition for review in the court of appeals is "the sole and exclusive means for judicial review of an order of removal," 8 U.S.C. § 1252(a)(5), so we don't have jurisdiction to review a removal order in

[2] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

habeas. But "the district court retains jurisdiction under 28 U.S.C. § 2241" to hear an alien's challenge to the legality of her detention. *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1365 (11th Cir. 2006); *see also Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) ("Although district courts do not have jurisdiction to review § 2241 petitions filed by an alien challenging a final order of removal, jurisdiction exists over a § 2241 petition if the alien challenges the legality of his detention." (citation omitted)).

Because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Respondents must "limit[ ] an alien's post-removal detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689–90. According to the Supreme Court, "six months is a presumptively reasonable period to detain a removable alien awaiting deportation under such circumstances." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051 (11th Cir. 2002) (citing *Zadvydas*, 533 U.S. at 701). The Court was quick to point out, though, that this six-month period is just a guidepost and that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. "Therefore, in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale*, 287 F.3d at 1052. If the Petitioner makes that showing, the Respondents can "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

But there's one caveat to all of this: "Courts in this Circuit have consistently held that, when a habeas petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future[.]" *Lambert v. Garland*, 2023 WL 2016841, at *3 (Altman, J.) (S.D. Fla. Feb. 15, 2023) (quotation marks omitted); *see also Oladokun v. U.S. Atty. Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future[,]'"

because his own "non-cooperation is the only barrier to his removal." (citing *Zadvydas*, 533 U.S. at 701)); *Linares v. DHS*, 598 F. App'x 885, 887 (11th Cir. 2015) ("[The petitioner's] obstructive actions, failure to cooperate, and frequent litigation are the only reasons he remains in the United States. . . . Thus, [the petitioner] cannot demonstrate that 'there is no significant likelihood of removal in the reasonably foreseeable future[.]'" (citing *Zadvydas*, 533 U.S. at 684)); *Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015) ("[T]he district court did not err in determining that [p]etitioner's three-year detention while awaiting removal was not unreasonable[,]" where the "[p]etitioner's own acts and failure to make timely application in good faith for travel documents has prevented his removal." (citations omitted)); *Guo Xing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013) ("The six-month period is tolled, however, if the alien acts to prevent his removal."); *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) ("However, the removal period was tolled . . . when Gozo filed for withholding of removal[.] . . . Gozo interrupted the running of time under *Zadvydas* when he simultaneously challenged issues related to his removal order and his post-removal period detention." (cleaned up)).

## ANALYSIS

The Respondents insist that Lopez-Garcia's "own conduct, specifically his multiple refusals to sign the Notices of Removal to Mexico, have thwarted the Government's effort to remove him to Mexico." Gov't Suppl. at 4; *see also id.* at 2 ("Again, assuming [ Lopez-Garcia's] cooperation, ICE ERO sees no impediment to [his] removal."). Lopez-Garcia thus "cannot now complain that his detention has been unlawfully prolonged." *Id.* at 4. Lopez-Garcia counters that he "has not refused to participate in the removal process or otherwise intentionally obstructed the Government's efforts to effectuate his removal" for two reasons. Pet. Suppl. at 1. *First*, "he does not possess a travel document authorizing his admission into Mexico," "has not received confirmation that Mexico has agreed to accept him or that the necessary documentation for his admission has been issued," and "believes that

Mexican authorities will not accept him." *Id.* at 1–2. *Second*, he argues that "[e]xpressing fear of removal to a particular country is fundamentally different from willfully obstructing removal." *Id.* at 2.

We begin with a brief note on timing. ICE took Lopez-Garcia into custody on March 17, 2026, and he filed this Petition on August 19, 2026, approximately five months later. *See* Herrero Decl. ¶ 11; Petition at 1. His *Zadvydas* claim, filed only five months and two days after his detention, was therefore premature when it was filed. *See Akinwale*, 287 F.3d at 1052 (explaining that the six-month period "must have expired at the time [the] § 2241 petition was filed in order to state a claim under *Zadvydas*"). In our October 13 Order, though, we recognized that he'd since "satisfied the first *Zadvydas* step because he's been detained for more than six months." Order for Supplemental Briefing [ECF No. 12] at 4. But since he hadn't shown that removal was unlikely—and because the Respondents had offered "no evidence about [Lopez-Garcia's] removability," *ibid.*—we ordered supplemental briefing on that second *Zadvydas* question. We now have that evidence.

Lopez-Garcia hasn't provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. It's true that Cuba has denied his repatriation. *See* Herrero Decl. ¶ 17 ("As of October 8, 2026, Petitioner has been denied for repatriation by the Government of Cuba."). But ICE is now pursuing removal to Mexico, and Lopez-Garcia offers no evidence for his view that Mexico has rejected him. So, while he "believes that Mexican authorities will not accept him" because of his criminal history, Pet. Suppl. at 2, he "does not claim to possess an official determination from Mexican authorities denying his admission," *ibid.* Nor has he provided any evidence that Mexico requires travel documents ICE cannot now obtain. And "[s]peculation is insufficient to carry the burden of a habeas corpus petitioner." *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) (quoting *Hall v. Head*, 310 F.3d 683, 705 (11th Cir. 2002)).

In any event, the Respondents have now offered "evidence sufficient to rebut [Lopez-Garcia's] showing." *Zadvydas*, 533 U.S. at 701. Deportation Officer Ricardo Herrero has attested, under

penalty of perjury, that "the Government of Mexico regularly accepts individuals who are removed from the United States" and that a Mexican travel document generally isn't required to effectuate removal. Herrero Decl. ¶ 20. So, "[a]ssuming [Lopez-Garcia's] cooperation," Officer Herrero "sees no impediment to [his] removal." *Id.* ¶ 21. The Respondents have also submitted two Notices of Removal to Mexico and a Warning for Failure to Depart [ECF No. 13-3]. *See also* Herrero Decl. ¶¶ 15–16, 18. The Respondents have thus identified a destination, documented concrete steps towards removal, and provided sworn testimony explaining why removal remains feasible. That's sufficient to rebut Lopez-Garcia's speculation that Mexico won't accept him. *See Lambert*, 2023 WL 2016841, at *4 (rejecting the petitioner's "conclusory proclamations" that ICE couldn't execute his removal order and that the status of his travel documents was unknown); *Cardo v. Mordant*, 2026 WL 1429290, at *2 (M.D. Fla. May 21, 2026) (Dudek, J.) ("The Government does not carry a reciprocal burden to prove to the noncitizen's personal satisfaction that his reception is guaranteed before he is obligated to proceed with removal. By treating his compliance as a conditional benefit that the Government must earn by producing diplomatic paperwork, Cardo attempts to turn § 1231 on its head.").

Lopez-Garcia's second argument fares no better. Although he insists that "[e]xpressing fear of removal to a particular country is fundamentally different from willfully obstructing removal," Pet. Suppl. at 2, the Respondents say that his "multiple refusals to sign the Notices of Removal to Mexico[ ] have thwarted the Government's effort to remove him to Mexico," Gov't Suppl. at 4. Twice, ICE notified him of its intention to remove him to Mexico, and twice he "refused to sign the notice." Herrero Decl. ¶¶ 15, 18; *see also* Sept. 3 Notice of Removal; Oct. 15 Notice of Removal. He also refused to sign a Warning for Failure to Depart. *See* Warning for Failure to Depart; Herrero Decl. ¶ 16. According to the Respondents, these refusals prevented ICE from effectuating his removal. *See* Gov't Suppl. at 4; *see also* Herrero Decl. ¶ 21.

Lopez-Garcia doesn't disagree that he refused to sign these documents. *See* Pet. Suppl. at 1–3 (failing to mention Lopez-Garcia's refusal to sign). And, although he generally denies obstructing removal, he never squarely addresses the Respondents' contention that, but for his refusals, ICE would have effectuated his removal to Mexico. *See ibid.*; *see also* Gov't Suppl. at 4 ("Again, assuming Petitioner's cooperation, ICE ERO sees no impediment to Petitioner's removal."); Herrero Decl. ¶ 21 (same). Instead, he insists that he fears removal to Mexico and believes that Mexican authorities won't accept him. *See* Pet. Suppl. at 1 ("Petitioner has, however, expressed to ICE his genuine fear of being removed to Mexico."); *id.* at 2 ("Petitioner further submits that he does not possess a travel document authorizing his admission into Mexico."); *ibid.* ("Although Petitioner does not claim to possess an official determination from Mexican authorities denying his admission, he respectfully submits that the Government should be required to provide concrete evidence of Mexico's willingness to accept him rather than rely upon speculation."). But, as we've explained, his unsupported beliefs don't establish that removal is unlikely in the reasonably foreseeable future. *See Oladokun*, 479 F. App'x at 897 ("[S]peculation is insufficient to carry the burden of a habeas corpus petitioner." (quoting *Hall v. Head*, 310 F.3d 683, 705 (11th Cir. 2002))). His repeated refusals thus lend further support to the Respondents' contention that his continued detention is attributable to his own conduct rather than some inability to effectuate removal. *See* Gov't Suppl. at 4–5; *cf. Oladokun*, 479 F. App'x at 897 (rejecting a *Zadvydas* claim where the petitioner's own "non-cooperation [was] the only barrier to his removal").[3]

[3] District courts in our Circuit are divided over whether a petitioner's refusal to sign a notice of removal is sufficient to show that the petitioner has "thwarted" his removal. Judge Bloom of our Court found that the government hadn't carried its burden of showing that a petitioner's refusal to sign a notice of removal thwarted his removal because the government failed to "explain how an unsigned document of this sort 'hinders removal efforts.'" *Mendoza Martinez v. Parra*, 2026 WL 2318024, at *6 (S.D. Fla. Aug. 11, 2026) (Bloom, J.) (quoting *Massip Varela v. Warden, Fla. Soft-Sided Facility*, 2026 WL 1596220, at *2 (M.D. Fla. June 4, 2026) (Chappell, J.)); *see also Rodriguez v. U.S. Dep't of Homeland Sec.*, 2026 WL 1694053, at *4 (M.D. Fla. June 11, 2026) (Pratt, J.) (rejecting the government's position that "failure to sign was akin to a refusal to make timely application in good faith for travel or other documents necessary for his removal or that his failure to sign otherwise prevented his removal" (cleaned up)). Judge Dimitrouleas, by contrast, has held that, where a petitioner "refused to sign the Notice of

* * *

We therefore **ORDER AND ADJUDGE** that Yordanis Lopez-Garcia's Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**. All pending motions are **DENIED as moot**, and all deadlines are **TERMINATED**. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on November 6, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

Removal," his "non-cooperation with Respondent's removal efforts is the only barrier to his removal." *Perez v. Warden, Krome N. Serv. Processing Ctr.*, 2026 WL 2794788, at *1 (S.D. Fla. Sept. 18, 2026) (Dimitrouleas, J.); *see also Dieguez-Cuellar v. Warden, Krome N. Serv. Processing Ctr.*, 2026 WL 3056860, at *3 (S.D. Fla. Oct. 13, 2026) (Dimitrouleas, J.) (finding that a "[p]etitioner does not provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future when he is responsible for thwarting his removal" because he "was issued a notice of removal advising him of the intention of Immigration and Customs Enforcement to remove him to Mexico, but on the same date, [the] [p]etitioner refused to sign the same"); *Cardo*, 2026 WL 1429290, at *2 (holding that a petitioner's "refus[al] to sign the notice of removal" was "a textbook act of actively preventing removal" and rejecting the petitioner's "argu[ment] that because immigration officials have not provided him with concrete documentation showing that Mexico has formally agreed to accept him, he has no obligation to cooperate," because that argument "attempts to justify this resistance by shifting the blame to the Government"). We agree with Judge Dimitrouleas's well-reasoned view—especially given the Respondents' undisputed evidence that, but for Lopez-Garcia's refusal to sign, there's now no impediment to his removal.